**TAYLOR & COHEN LLP**

40 Worth Street, 10th Floor
New York, NY 10013
Tel (212) 257-1900
Fax (646) 808-0966
www.taylorcohenllp.com

April 29, 2019

*By ECF and Email*

The Honorable Gregory H. Woods
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re:** *United States v. Rudy Delgado*, 18 CR 902-03 (GHW)

Dear Judge Woods:

      I represent Rudy Delgado as CJA counsel and submit this letter in connection with his sentencing, which is scheduled for May 13, 2019.

      Probation has recommended that the court impose a sentence of 60 months of imprisonment, followed by four years of supervised release. This recommendation is within Mr. Delgado's stipulated Guidelines range of 60 to 71 months. We respectfully request that the court impose the sentence recommended by Probation, because such a sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

      Enclosed with this submission are no fewer than 17 letters of support written by Mr. Delgado's family and friends. The portrait of Mr. Delgado that emerges from these letters is of a outgoing and caring family man. He has nurtured his three daughters as well as his numerous nieces and nephews; for instance, Mr. Delgado's eldest daughter, a seventeen-year-old student-athlete who has been admitted the University of Connecticut, calls her father "the anchor in our lives" and relates that he encouraged her to excel at basketball and cheered her on at her games. (Ex. A). Mr. Delgado is also a caregiver for his elderly father, Domingo, and would regularly take him to his medical appointments and spend time with him. It is clear from the letters that Mr. Delgado's family and friends love him very much and are saddened by the crime he has committed, which they consider to be out of character.

      Some of the letters also refer to Mr. Delgado's struggles in life, which may have contributed to the offense he committed. Mr. Delgado became a father when he was only 16 years old, and the emotional and financial pressures of parenthood led him to drop out of high school and to engage in episodes of self-harm. His brother Alvaro relates that Mr. Delgado once had to be rushed to the hospital after he swallowed a large number of pills. He was held for several days for observation.

April 29, 2019
Hon. Gregory H. Woods
Page 2

While Mr. Delgado has since earned his GED and is an avid reader, he has also struggled with drugs, primarily marijuana, on which he became heavily dependent as a misguided means of coping with stress.

Now, Mr. Delgado is determined to get his life back on track. He quickly accepted responsibility for the crime he committed and accepts his punishment. He is deeply remorseful not just for the crime and its impact on the community, but also for the hole in his family that his imprisonment has created. Mr. Delgado wants to put an end to his marijuana use and would welcome substance-abuse and psychological treatment. He is determined to improve himself and emerge from this experience as a better person.

This is not Mr. Delgado's first offense, unfortunately. Although his criminal history score is zero, the PSR indicates that he has several youthful offender and adult convictions, all of them drug-related. In each instance, Mr. Delgado was sentenced to conditional discharge or time served. Now, he has been convicted of an offense with a five-year mandatory minimum sentence, which is much longer than any of the sentences in his criminal history. A five-year sentence, which falls within Mr. Delgado's Guidelines range, will therefore be sufficient, but not greater than necessary, to deter him from reoffending in the future.

Mr. Delgado is 34 years old. When he completes his sentence, he will still be a young man who can live up to the great potential described in the letters from his family and friends.

## The Offense Conduct

Mr. Delgado took responsibility in his guilty plea for conspiring to distribute more than 196 grams of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(B). Between April and July 2018, Mr. Delgado participated in six sales of crack and heroin to two undercover officers. *See* PSR ¶¶ 11-12 The quantity of drugs involved in those sales was approximately 210 grams of crack and 25 grams of heroin and fentanyl. *See id.*

## Mr. Delgado's History and Personal Characteristics

Mr. Delgado is 34 years old. He was born in New York City and, prior to his arrest, lived with his girlfriend, Vilmari Hernandez, in the Bronx. *See id.* ¶¶ 46, 52. He grew up as the second youngest of six siblings in a hard-working and tight-knit immigrant family. Mr. Delgado's father was a cab driver and his mother, who recently retired, worked at a children's clothing store in the Bronx. All of Mr. Delgado's siblings have steady employment histories and spotless criminal records.

Mr. Delgado was an able student, but becaming a father at the age of 16 derailed his education. He dropped out of school because he felt pressure to provide

for his daughters. He had a variety of unskilled jobs, including at an auto parts supplier and a hat store. Perhaps if he were a more selfish person, Mr. Delgado might have left his elder daughters' mother, Susy Perdomo, to fend for herself, but he has always been absolutely committed to each of his children. While Mr. Delgado and Ms. Perdomo are no longer together, she describes their relationship in her letter to the Court as "co-parents." (Ex. B). Ms. Perdomo says that he has provided financial assistance. While the amount of money he has provided "isn't much," his help is "something that takes the stress off me." (*Id.*; *see also* Ex. C (letter of support of Yennifer Sanchez Cruz)).

Mr. Delgado's eldest daughter, N., who is a talented basketball player and has been admitted by the University of Connecticut, writes about her father's effect on her life:

> My father is one of my only true best friends. Whenever I need him, he is right there…. I wouldn't know how to find the joy in playing sports without him around. He goes to every one of my games that he can. He spends time to practice with me and get me better and most of all keeps me motivated.

(Ex. A).

Mr. Delgado is equally committed to his nieces and nephews, several of whom have also written letters of support. For example, his niece Amanda Delgado, an 18-year-old freshman at Barry University, writes that Mr. Delgado "always pushed me to be better and do better…. He was the cool uncle, the uncle I can cry to, laugh with, talk with. His kind and big heart has such an impact on me." (Ex. D). Another niece, Julissa De Jesus, a junior at Lehman College who looks forward to qualifying as a registered nurse, recalls that Mr. Delgado would often take his daughters and nieces and nephews bowling, ice skating or to the movies. (*See* Ex. E). Ms. De Jesus relies on her uncle for emotional support, as well:

> When I was going through a rough time in my life, he would always call me to make sure I was alright financially and mentally. I love the fact that he always looks out for me like if I'm one of his daughters.

(*Id.*). Mr. Delgado's nephew, Jayson De Los Santos, a student-athlete at BMCC, writes that Mr. Delgado "was always telling me to stay in school, keep playing basketball and to respect my parents…. He was very encouraging to me, my sister and his daughter when it came to sports." (Ex. F). Julissa De Jesus' sister Valeria also wrote a letter of support in which she calls Mr. Delgado a "wonderful uncle" and "an amazing father." (Ex. G).

April 29, 2019
Hon. Gregory H. Woods
Page 4

  Two points are worth emphasizing about the testimonials by Mr. Delgado's daughter, nieces and nephew. First, the younger members of Mr. Delgado's family love being around him and are grateful for the interest he takes in their lives. They are saddened by the crime that has resulted in his imprisonment. Second, the fact that all of these young people are either enrolled or soon to be enrolled in college speaks volumes about the love, encouragement and guidance they received when they were growing up. They are firmly on the path to success, thanks in part to Mr. Delgado.

  Additionally, Mr. Delgado provided critical emotional support for his youngest sister, Amber Marie, when she too became a teenage parent:

> Rudy has help[ed me] get through some hardships in my life. One of the hardships was when I got pregnant at the age of 16. He was very supportive of me although I knew I had not listened to him nor my other siblings when they advised me on having inter-relations with a boyfriend I had at the time. It was a very difficult time for me being pregnant as a teen. I felt like I could relate to him being that he became a father at the age of 16 as well. He would always say positive things to me and encourage me to not give up on myself because I was going to have someone looking up to me. Rudy was with me at the time I gave birth to my older son C[]. This was a very special moment for me. Since then Rudy has always been involved in my son's life. He knew that my sons father would not be involved in my son's life so he took it upon himself to be a father figure to my son.

(Ex. H). Mr. Delgado also helps his elderly father, Domingo, by taking him to medical appointments and simply spending time with him. "My son is now the one who takes care of me," Domingo writes. (Ex. I). Mr. Delgado's father has trouble with his eyes and, not long before Mr. Delgado's arrest, underwent surgery for glaucoma and cataracts. (*See id.*). Beyond taking his father to appointments and helping him communicate with doctors, Mr. Delgado gives his father needed companionship:

> Rudy helps me get by on the daily basis. I have days where I'm not doing well being that I'm not able to work at the moment and I have nothing else to do. This is when he comes over and spends time with me he encourages me to stay strong. I feel like he's there for me as I was for him when he was young.

April 29, 2019
Hon. Gregory H. Woods
Page 5

(*Id.*). In short, Mr. Delgado has had a positive impact on the lives of all generations of his family.

Several of Mr. Delgado's friends have also written letters of support. For example, Joel Claussell, who has known Mr. Delgado for decades, writes that "Rudy Delgado is a good hearted man and friend. I could always count on Rudy to be a shoulder to lean on, and to always be 100% honest in our friendship." (Ex. J). Wilkyn Suberbi, the fiancé of one of Mr. Delgado's sisters, writes about how much it meant to him that Mr. Delgado was so welcoming when he was introduced to the Delgado family:

> When I first met Rudy I was just meeting their whole entire family for the first time as well, I was really nervous and he was the one to calm my nerves at that point in time we became very close I felt like I could trust him.

(Ex. K). Mr. Suberbi's 22-year-old son, Franklin, also appreciates the warmth with which Mr. Delgado welcomed him into the family: "Rudy never wanted me to be anyone but myself around him. He always made me feel cool for just being me even when I felt different and alone." (Ex. L).

Mr. Delgado's longtime friend Jefferson Thompson writes, "I can truly say that for each and every year I've known Rudy he has never let no one in his family, nor circle of friends down, up until he made this huge mistake." (Ex. M). Mr. Thompson goes on to say that he will help Mr. Delgado find work after his release. (*See id.*). It is clear that Mr. Delgado has won his friends' devotion through his quality of character.

The positive effect Mr. Delgado has had on others is even more remarkable given his own difficulties in life. As noted above, he became a father at a very young age and, soon after, dropped out of school. At that time, he was in a very fragile emotional state. At the age of 17, he swallowed a large number of pills and had to be taken to the hospital. His older brother Alvaro sums up the situation in his letter to the Court:

> As you know he has the 3 daughters 2 of them he had while in high school, he was still a kid himself and now he had the responsibility to provide for his kid but he could not and that was a major issue with the mother of these 2 kids it got so bad that my brother fell into a deep depression and tried to take his life away by taking some pills, luckily enough we were able to help him and we called the ambulance and he was taken to a local hospital

April 29, 2019
Hon. Gregory H. Woods
Page 6

> and then was placed in a psychiatric ward for a few days
> so that they could evaluate him.

(Ex. N). Their mother Cristina also believes that having children before he was emotionally mature took a toll on Mr. Delgado:

> My son has had his troubles but nothing like this. By
> troubles I mean when he became a father at such a young
> age. This event did change my son. He wanted to assume
> his responsibility and he did his best he could to take care
> of his daughter, we've also helped.

(Ex. O). After he swallowed the pills, Mr. Delgado engaged in another episode of self-harm; he intentionally punched through a window, slicing open his arm in the process. He also started using marijuana as a misguided way to cope with stress, and his dependency on that drug has increased over the years. *See* PSR ¶ 63.

Mr. Delgado also had two drug-related youthful offender convictions at the age of 18. *See* PSR ¶¶ 37-38. In both instances, he served minimal jail time. In 2005 and 2007, he received two additional drug-related convictions, resulting in sentences of conditional discharge or time served, respectively. *See id.* ¶¶ 39-40. In 2007, he took the positive step of earning his GED. *See id.* ¶ 68. However, he has been unemployed for long periods since then and has largely been supported by his family.

Mr. Delgado wants to rebuild his life after he completes his sentences. He plans to marry his girlfriend, Vilmari Hernandez, and he wants to gain employment and write a book about his experiences, with a view to helping others cope with life's difficulties and avoid falling into criminal behavior. He sees putting a stop to his marijuana use as a key to succeeding in these goals.

Many of the letters speak to Mr. Delgado's deep remorse for his actions. For example, his older sister Alexandra writes that "[h]e is deeply saddened and remorseful for this mistake he has made I know as he expresses his emotions to me when we speak." (Ex. P). His mother writes that "[h]e is in deep regret for this crime which he has owned up to." (Ex. O). Mr. Delgado is especially sorry for the impact his offense will have on his daughters, from whom he will be separated. Being separated from his family is extremely hard for him. He and his family eagerly look forward to the day when they will be reunited.

April 29, 2019
Hon. Gregory H. Woods
Page 7

## List of Letters of Support[1]

| Author | Relationship to Mr. Delgado | Exhibit |
|---|---|---|
| N. D. | Eldest Daughter | A |
| Susy Perdomo | Mother of Mr. Delgado two eldest daughters | B |
| Yennifer Sanchez Cruz | Mother of Mr. Delgado's youngest daughter | C |
| Amanda Delgado | Niece | D |
| Julissa De Jesus | Niece | E |
| Jayson De Los Santos | Nephew | F |
| Valeria De Jesus | Niece | G |
| Amber Marie Delgado | Youngest sister | H |
| Domingo Delgado | Father | I |
| Joel Claussell | Friend for 20 years | J |
| Wilkyn Suberbi | Friend; fiancé of Mr. Delgado sister Amber Marie Delgado | K |
| Franklin Suberbi | Son of Wilkyn Suberbi | L |
| Jefferson Thompson | Friend for 18 years | M |
| Alvaro Delgado | Older brother | N |
| Cristina Delgado | Mother | O |
| Alexandra Delgado | Older sister | P |
| Robert Pacheco | Friend | Q |

---

[1] Personal identifying information and the full names of minor children have been redacted from the ECF version of the letters in accordance with the Southern District of New York's ECF Privacy Policy.

April 29, 2019
Hon. Gregory H. Woods
Page 8

## Argument

The Guidelines range to which the parties stipulated and Probation independently determined is 60 to 71 months.[2] That calculation is correct. As the Court knows, the Guidelines range is "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After the Court calculates the applicable Guidelines range, it must consider the seven factors that are set forth in 18 U.S.C. § 3553(a), including

    (1) "the nature and circumstances of the offense and the history and characteristics of the defendant";

    (2) the four purposes of sentencing set forth in Section 3553(a)(2);

    (3) the Guidelines range itself;

    (4) any relevant policy statement by the Sentencing Commission; and

    (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

18 U.S.C. § 3553(a)(1), (2), (4), (5) and (6). Section 3553(a) further provides that, in determining the appropriate sentence, the sentencing judge should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(2).

---

[2] Mr. Delgado's adjusted offense level is 25 and his Criminal History Category is I, which results in a Guidelines range of 57-71 months. However, since the crime to which Mr. Delgado pleaded guilty has a five-year mandatory minimum sentence, the Guidelines range applicable in this case is 60-71 months.

Here, Probation has recommended a Guidelines sentence of 60 months' imprisonment, 4 years' supervised release, and a $100 special assessment. *See* PSR Addendum at 23. In its justification for this recommendation, Probation noted that "it is evident that [Mr. Delgado] has strong family ties and responsibilities." *See id.* at 22. Probation further stated that Mr. Delgado "is a non-violent offender with a limited criminal history." *Id.* Accordingly, Probation believes that a 60-month sentence is sufficient but not greater than necessary to comply with the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *See id.*

We respectfully urge the Court to adopt Probation's recommendation for the following reasons. *First*, while Mr. Delgado has committed a serious offense, he has many good qualities, which should be taken into account when determining an appropriate sentence. A chorus of supporters have written the Court to describe Mr. Delgado's good character and the positive effect he has had on those around him. It is clear that his family and friends are devoted to Mr. Delgado because of his personality and supportiveness. The Delgado family will not be whole again until Mr. Delgado has finished his sentence. Mr. Delgado's elderly father particularly relies on his son's support, and his daughters will miss their father terribly while he is in prison. Thus, Mr. Delgado's sentence will have an impact on his entire family.

Mr. Delgado is an intelligent and thoughtful person who is capable of succeeding and putting his mistakes behind him. He demonstrated a commitment to self-improvement when he earned his GED despite having dropped out of high school years earlier. Additionally, Mr. Delgado also has a very strong support network, which will be invaluable to him when he reintegrates with society. Many of his family and friends have promised to help him obtain employment and stay on the right path after his release.

*Second*, Mr. Delgado has had to overcome significant hardships, mostly resulting from his becoming a father before he was financially and emotionally ready to support a family. It is a testament to his character that he has stuck to his responsibilities as a father. Nevertheless, as a result of becoming a father so young, Mr. Delgado's education was interrupted, he struggled with stress and possibly depression, and he engaged in various forms of self-harm, ranging from swallowing pills to developing a dependency on marijuana. The instant offense represents, unfortunately, a significant setback, and Mr. Delgado has work to do to put his life back on course. As a convicted felon, the road ahead will not be easy. After his release, he will not have access to an array of government benefits on which many Americans rely, and the stigma attached to his conviction could prevent him from applying for a loan or obtaining a lease.

*Third*, a five-year sentence followed by four years of supervised release is sufficient but not greater than necessary to achieve the goals of sentencing set forth in § 3553(a)(2). These factors primarily concern affording deterrence and

April 29, 2019
Hon. Gregory H. Woods
Page 10

incapacitating the defendant in order to protect the public. Here, a five-year sentence will achieve the goal of deterring Mr. Delgado from committing other crimes. It should be noted that none of the prior convictions in the PSR involved more than a few days of jail time. Now, as a result of the mandatory minimum sentence applicable in this case, Mr. Delgado faces a far greater punishment than he received for his convictions in his late teens and early twenties. Thus, a five-year sentence followed by four years of supervised release would be sufficient to achieve the goal of deterrence. Additionally, the public will not need to be protected from further crimes after Mr. Delgado's five years of imprisonment, as Probation has recommended conditions for supervised release including drug-testing and a search and seizure condition that will help ensure that he does not engage in drug use or drug dealing while he is readjusting to society. Accordingly, a five-year sentence followed by four years of supervised release would be sufficient but no greater than necessary to achieve the goals of affording adequate deterrence and protecting the public.

On the other hand, a prison sentence that is greater than the five-year mandatory minimum would not produce any societal benefit. While there is understandable pressure on judges and policymakers to curb drug-dealing in New York City and elsewhere, lengthy prison sentences for street-level dealers is not the answer. There is little, if any, empirical evidence to support the view that increasing the severity of sentences for dealing drugs is effective at discouraging drug dealing or reducing overdoses.[3] Indeed, researchers have found that increasing incarceration for drug offenses has a significant correlation with *higher*, not lower, rates of drug use.[4] Accordingly, in this case, a Guidelines sentence equal to the mandatory minimum would be sufficient but not greater than necessary to achieve the goals of specific and general deterrence and protecting the public

---

[3] *See, e.g.*, Valerie Wright, "Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," The Sentencing Project (Nov. 2010), *available at* https://www.sentencingproject.org/publications/deterrence-in-criminal-justice-evaluating-certainty-vs-severity-of-punishment/ (last visited April 15, 2019), at 9 ("Existing evidence does not support any significant public safety benefit of the practice of increasing the severity of sentences by imposing longer prison terms. In fact, research findings imply that increasingly lengthy prison terms are counterproductive.").

[4] *See* Roger K. Przybylski, "Correctional and Sentencing Reform for Drug Offenders: Research Findings on Selected Key Issues" (Sep. 2009), *available at* http://www.ccjrc.org/wp-content/uploads/2016/02/Correctional_and_Sentencing_Reform_for_Drug_Offenders.pdf (last visited April 15, 2019), at 13-14.

April 29, 2019
Hon. Gregory H. Woods
Page 11

Finally, we note that up until the time of his arrest, Mr. Delgado was a regular user of marijuana. Unfortunately, he thought that taking marijuana would relieve stress, when in fact his drug use made it harder for him to meet his responsibilities. Over the years, Mr. Delgado's tolerance increased to the point where he was consuming as much as a third of an ounce a day. Mr. Delgado regrets his drug use because he feels it affected his moods and his behavior towards others. He is determined to stay drug-free going forward. Accordingly, we respectfully request that the Court recommend that Mr. Delgado be admitted to any drug programs for which the Bureau of Prisons deems him eligible during his incarceration. Such a recommendation, we respectfully submit, would help achieve the sentencing goal of providing Mr. Delgado with needed medical treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D).

## **Conclusion**

For the reasons set forth above, we respectfully request that the Court adopt Probation's recommendation of a Guidelines sentence of 60 months' imprisonment, followed by four years' supervised release.

Respectfully submitted,

_____/s/_____
Zachary Taylor

cc: Adam Hobson
    Assistant United States Attorney