| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ X<br>　　　　　　　　　　　　　　　　　　　　　:<br>　UNITED STATES,　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　-v-　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　:<br>　RUDY DELGADO,　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　Defendant.　:<br>------------------------------------------------------------ X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  9/11/2020<br><br><br>1:18-cr-902-GHW<br><br>ORDER |

GREGORY H. WOODS, United States District Judge:

　　Rudy Delgado was sentenced to the mandatory minimum sentence of 60 months imprisonment for selling crack and heroin laced with fentanyl.  Now, he moves for compassionate release on the basis of recently discovered health concerns.  Because his showing regarding the incremental risk associated with COVID-19 is not compelling, and because the Court's evaluation of the sentencing factors does not support a modification of the mandatory minimum sentence imposed on Mr. Delgado, his motion is denied.

## I.　　BACKGROUND

　　On May 28, 2019, the Court sentenced Rudy Delgado to a term of 60 months imprisonment. Sentencing Transcript, Dkt. No. 50 ("Tr.").  That sentence represented the mandatory minimum sentence for his crime of conviction—participation in a drug trafficking conspiracy that sold substantial quantities of crack, and, in Mr. Delgado's case, heroin laced with fentanyl.

　　Mr. Delgado was born in April 1984. Tr. at 29:2-3.  At the time of his sentencing, the Court understood that the defendant was "blessed with good physical health." Tr. at 30:12.  The health concerns raised in Mr. Delgado's motion were either not known to him, or did not affect him sufficiently at the time of sentencing to merit mention in connection with his sentencing.  The Court observed, however, that Mr. Delgado had a "long history of substance abuse." Tr. at 30:17.  In

imposing sentence, the Court observed a number of issues that resulted in the Court's determination that the sentence imposed was needed to deter the defendant from further crimes. Those included his limited legitimate work history, and his history of substance abuse—coupled with the fact that this was Mr. Delgado's fifth conviction for a drug-related offense.

Just under a year after he was sentenced, on May 21, 2020, the Court received a letter from Rudy Delgado, acting *pro se*, requesting that the Court order his compassionate release pursuant to 18 U.S.C. § 3582(c). Dkt. No. 51. On July 3, 2020, Mr. Delgado's counsel filed a supplemental motion on Mr. Delgado's behalf (the "Motion"). Dkt. No. 71. The Government filed its opposition on July 23, 2020. Dkt. No. 72. Defendant filed a reply on July 30, 2020. Dkt. No. 73.

Mr. Delgado's motion points to the incidence of COVID-19 at the FCI Ft. Dix, where he is incarcerated, and his health conditions—principally ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—as the basis for the Court to order his compassionate release. Mr. Delgado's motion is supported by an affidavit prepared by Dr. Mariya Masyukova, an assistant professor at the Albert Einstein College of Medicine. Dkt. No. 71-1 ("Masyukova Decl."). Based on her review of Mr. Delgado's medical records, Dr. Masyukova provides her medical opinion that, among other things: (1) "Mr. Delgado's ▇▇▇▇▇▇▇▇ *may* predispose him to poor outcomes if he contracts COVID-19"; (2) "Mr. Delgado's ▇▇▇▇▇▇▇ *may* put him at high risk of complications if he contracts COVID-19"; and (3) "Mr. Delgado is *likely* at higher risk of contracting COVID-19 and developing serious illness from COVID-19 due to ▇▇▇▇▇▇▇▇▇▇." *Id.* (emphasis added). Dr. Masyukova concludes with her normative evaluation that "[t]aken together, the above present an undue risk to the health and life of Mr. Rudy Delgado." *Id.* There is no evidence that any of Mr. Delgado's asserted health conditions have limited his ability to function normally—the focus of his motion is solely the incremental risk that "may" exist if he contracts COVID-19.

The Motion acknowledges that Mr. Delgado "had trouble adjusting to incarceration" at the

outset of his term of imprisonment. Motion at 9. He was disciplined and confined to the SHU for three months; he attempted to harm himself with a razor. *Id.* "Since then, Mr. Delgado has worked on improving his coping skills and sought out treatment." *Id.* He applied to the facility's RDAP program in January of this year and was accepted. He is currently enrolled in the program and is making good progress. *Id.* The Court understands that the defendant will be eligible for release to a halfway house in September 2021 if he successfully completes his RDAP program. Motion at 14.

## II. LEGAL STANDARD

As a general rule, courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c) ("The court *may not* modify a term of imprisonment once it has been imposed except" in specified circumstances) (emphasis added). The statute provides for specific exceptions to that general rule: "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," "after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that--extraordinary and compelling circumstances warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

"Congress has delegated authority to the Sentencing Commission ('USSC') to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v. Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). The relevant policy statement is U.S.S.G. § 1B1.13 (the "Policy Statement"). The Policy Statement states that a court may reduce a defendant's term of imprisonment

> if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

3

  (1) (A) extraordinary and compelling reasons warrant the reduction; or

    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

  (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

  (3) the reduction is consistent with this policy statement.

1 U.S.S.G. § 1B1.13.

  The commentary to the Policy Statement provides guidance regarding the circumstances in which "extraordinary and compelling reasons" for a reduction in a defendant's sentence exist.[1] The commentary highlights three particular grounds for such a finding: the medical condition of the defendant; the age of the defendant; and family circumstances. 1 U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The Court is not limited to the consideration of those factors alone, however. The Policy Statement anticipates that other reasons can support a finding of extraordinary and compelling circumstances that permit a sentence reduction. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) (permitting a finding of extraordinary or compelling circumstances when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C) [medical condition, age, and family circumstances of the defendant]"); *see also United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *6-7 (S.D.N.Y. Apr. 6, 2020) (outlining the discretion of district courts in evaluating extraordinary and compelling

---

[1] The Policy Statement has not been updated since the passage of the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194. The First Step Act amended 18 U.S.C. § 3582 to permit a defendant to bring a motion for compassionate release if the BOP chose not to file one on his behalf. The language of the Policy Statement does not reflect the fact that under the First Step Act, the Court will be making determinations regarding the existence of compelling and extraordinary circumstances without the input of the BOP. As the court observed in *Ebbers* the Policy Statement "is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act. For example, it refers in its opening line to a 'motion of the Director of the Bureau of Prisons.'" *Ebbers*, 2020 WL 91399, at *4. Similarly, the commentary's formulation of the catch-all provision refers only to a determination by the BOP, not by a district court. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of Prisons, there exists . . . .").

circumstances).

The Policy Statement states that the following medical conditions are sufficient to support a finding of extraordinary and compelling reasons for a reduction in a defendant's sentence:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

1 U.S.S.G. § 1B1.13 cmt. n.1(A). According to the commentary to the Policy Statement, compelling medical conditions require a showing of a substantial, actual deterioration in the medical condition of the defendant—either "a terminal illness" or "a serious physical or medical condition . . . from which he or she is not expected to recover."

In this case—as in every other COVID-19 related compassionate release application that the Court has reviewed—the defendant's medical condition is not the type of "Medical Condition" described in the Policy Statement: he is not suffering from a terminal illness, and he does not have a medical condition from which he is not expected to recover. Instead, he is at risk of getting a disease, which in some cases is terminal. He has medical conditions that may increase the risk of an adverse outcome if he gets COVID-19. So a finding of extraordinary and compelling circumstances in this case would rely not on the defendant's medical condition as described in the Policy Statement alone. Instead, the courts that have found the existence of extraordinary and compelling

5

circumstances for a reduction in a defendant's sentence as a result of COVID-19 rely on an evaluation of a combination of factors including the defendant's physical condition and the court's assessment of the incremental risk associated with COVID-19. Many courts evaluating the existence of compelling and extraordinary circumstances also weigh the adequacy of the BOP's response to the pandemic, perhaps with an eye to the policy objective of thinning jail populations to reduce the likelihood of the spread of the disease. *See, e.g., United States v. El-Hanafi*, No. 10-CR-162 (KMW), 2020 WL 2538384, at *5 (S.D.N.Y. May 19, 2020); *United States v. Zubkov*, No. 14-CR-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020).

This is difficult terrain for a court. To the extent that an evaluation of the existence of extraordinary and compelling circumstances has evolved to require an assessment of the adequacy of the BOP's response—individual trial judges assessing individual cases on an emergency basis may not have the opportunity to assess all of the systemic considerations facing the institution. And the assessment will vary by facility and time. The BOP's response has evolved over the course of the pandemic: one might reasonably be expected to have a different view of the adequacy of the BOP's response, and the threat to inmates, in March than in August. Harder still is the task of deciding whether an inmate should face any incremental amount of risk—COVID-19 is dangerous; and life is invaluable. For that reason, the Court looks to the Policy Statement and its commentary for guidance regarding what types of medical conditions should drive a finding of extraordinary and compelling circumstances that justify the reduction of a defendant's sentence.

### III. DISCUSSION

COVID-19 is a global pandemic. *See* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen (last visited May 25, 2020). Since its arrival in the United States, the federal and local governments have reacted to stem the risk associated with the disease.

The risk of death associated with the disease varies substantially based on the age of the

infected patient. *See, e.g.*, https://data.cdc.gov/NCHS/Provisional-COVID-19-Death-Counts-by-Sex-Age-and-S/9bhg-hcku (Last visited May 25, 2020). For example, in New York City—the epicenter of the disease in the United States—the death toll has fallen disproportionately on people who were more than 75 years old. *See* https://www1.nyc.gov/site/doh/covid/covid-19-data.page (Last visited June 10, 2020) (showing 8,397 confirmed deaths from COVID-19 in the 75+ age bracket, or 48.66% of confirmed COVID-19 deaths). For people in the 18-44 age bracket, in which Mr. Guzman falls, the mortality rate was dramatically smaller. *Id.* (showing 678 confirmed deaths from COVID-19 in that age cohort, or 3.9% of confirmed COVID-19 deaths).

The risk of death from COVID-19 is greater for people with certain underlying health conditions. The Centers for Disease Control and Prevention track underlying health issues that are reported to be associated with deaths as a result of COVID-19. *See* https://data.cdc.gov/NCHS/Conditions-contributing-to-deaths-involving-corona/hk9y-quqm (Last visited August 30, 2020). The risk of death associated with those comorbidities also varies dramatically by age.

The Court is not fully persuaded by the defendant's arguments in support of a finding that "extraordinary and compelling" reasons exist for his release. The Court accepts that Mr. Delgado suffers from conditions that, as Dr. Masyukova's declaration asserts, may enhance the risk associated with COVID-19, and, in one instance is "likely" to increase his risk. But Dr. Masyukova's opinion is that a risk "may" exist, which is a step or two from stating to a degree of scientific certainty that one does exist. And the application provides no detail regarding the degree of risk associated with those comorbidities to the extent that such a risk may exist. In particular, the application provides no detail regarding the incremental risk associated with those comorbidities among people in Mr. Delgado's age cohort, which is an important consideration given Mr. Delgado's relative youth.

Mr. Delgado has shown that his medical conditions are associated with the possibility of

7

increased risk, but not the degree of possibility; or the extent of the incremental risk. Those gaps are meaningful. The Policy Statements do not support the conclusion that any degree of increased risk is sufficient to the requisite showing of "extraordinary and compelling circumstances."

Nonetheless, assuming, without holding, that Mr. Delgado's health conditions, and the incremental risk associated with the possibility of catching COVID-19 at his facility was sufficient to give rise to compelling and extraordinary reason for his release, the Court would not grant the requested relief.

In considering all of the § 3553(a) factors, the Court does not believe that a reduction in Mr. Delgado's sentence is warranted. While the factor related to the need for Mr. Delgado to receive medical care arguably weighs somewhat more heavily in favor of a lesser sentence now, the nature of his crime was very serious. And, unfortunately, the need for personal deterrence for Mr. Delgado remains high: he engaged in a conspiracy to sell substantial amounts of crack after four prior drug convictions. And, unfortunately, Mr. Delgado's struggles at the outset of his term of incarceration, suggest that the period of incarceration and treatment established by the Court at sentencing remains necessary. The Court believed at the time that Mr. Delgado would benefit from drug treatment and counseling; Mr. Delgado is now completing such a program. The Court's assessment of all of the other § 3553(a) sentencing factors, including the need for general deterrence, all continue to weigh heavily against a modification of his sentence now. In sentencing Mr. Delgado, the Court was very conscious of the admonition of § 3553 to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of the statute. The mandatory minimum statutory sentence imposed by the Court was appropriate for Mr. Delgado at the time and the Court's assessment of the § 3553(a) factors do not yield a different conclusion today, notwithstanding COVID-19 and its complications. The Court understands that Mr. Delgado's good behavior in prison will lead to his release to a halfway house in approximately one more year. Mr.

Delgado has not met his burden to show that an earlier release is appropriate.

In sum, having considered all of the information presented to the Court in connection with this application, the Court does not believe that a reduction in Mr. Delgado's sentence is warranted. His motion is DENIED.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 65, 67, and 71.

SO ORDERED.

Dated: September 11, 2020

_____
GREGORY H. WOODS
United States District Judge